Nos. 13-4378(L) & 13-4414

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES

*Plaintiff-Appellee,*

v.

NADER MODANLO

*Defendant-Appellant,*

IN RE NADER MODANLO

*Petitioner.*

On Appeal from, and on Petition for a Writ of Prohibition to, the United States District Court for the District of Maryland

## MOTION TO STAY PROCEEDINGS IN THE COURT BELOW PENDING APPEAL OR, IN THE ALTERNATIVE, PETITION FOR A WRIT OF PROHIBITION

James P. Wyda
Paresh S. Patel
OFFICE OF THE FEDERAL PUBLIC
DEFENDER DISTRICT OF MARYLAND
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600

David P. Burns
Samuel Everett Dewey
*Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
sdewey@gibsondunn.com

*Counsel for Nader Modanlo*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

JURISDICTION....................................................................................2

RELIEF SOUGHT ...............................................................................3

ISSUES PRESENTED..........................................................................3

STATEMENT OF FACTS ....................................................................3

ARGUMENT .....................................................................................10

I.   The District Court Lost Jurisdiction Over the Third Superseding
     Indictment When Modanlo Appealed. ........................................10

     A.   Modanlo's Notices of Appeal Divested the District Court of
          Jurisdiction Over the Third Superseding Indictment. .........10

     B.   The Dual Jurisdiction Doctrine Has No Application Here
          Because the District Court Expressly Found Modanlo's Appeal
          Not to Be Frivolous. ............................................................17

     C.   The Trial and Conviction of Modanlo Was a Nullity and the
          District Court Lacks Jurisdiction to Conduct Further
          Proceedings on the Verdict. .................................................20

II.  In the Unusual Procedural Posture Presented Here, Modanlo Is
     Entitled to a Stay of Post-Trial Proceedings As a Matter of Course; Or
     In the Alternative, a Prohibition. ................................................25

     A.   A Stay Should Issue As a Matter of Course.......................26

     B.   In the Alternative, a Prohibition Should Issue. ..................27

CONCLUSION ..................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Abney v. United States*,
431 U.S. 651 (1977) ................................................................ 1, 7, 28

*Apostol v. Gallion*,
870 F.2d 1335 (7th Cir. 1989)............................................ 11, 27, 29

*Ashe v. Swenson*,
397 U.S. 436 (1970) ...................................................................1

*Brickwood Contractors v. Datanet Eng'g*,
369 F.3d 385 (4th Cir. 2004)............................................... 12, 21

*Chemical Weapons Working Group v. Dep't of the Army*,
101 F.3d 1360 (10th Cir. 1996)...............................................25

*Cohen v. Beneficial Industrial Loan Corp.*,
337 U.S. 541 (1949) ...................................................................2

*Fobian v. Storage Tech. Corp.*,
164 F.3d 887 (4th Cir. 1999)....................................................11

*Garcia v. Burlington N. R.R. Co.*,
818 F.2d 713 (10th Cir. 1987)...................................................17

*Goshtasby v. Bd. of Trustees of the University of Illinois*,
123 F.3d. 427 (7th Cir. 1997)............................................... 11, 17

*Griggs v. Provident Consumer Disc. Co.*,
459 U.S. 56 (1982) ................................................................ 8, 11

*Grubb v. FDIC*,
833 F.2d 222 (10th Cir. 1988)...................................................25

*Hovey v. McDonald*,
109 U.S. 150 (1883) ...................................................................11

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Blackwater Security Co.*,
460 F.3d 576 (4th Cir. 2006) ................................................................28

*In re Braxton*,
258 F.3d 250 (4th Cir. 2001) ................................................................28

*In re Catawba Indian Tribe of South Carolina*,
973 F.2d 1133 (4th Cir. 1992) ..............................................................28

*In re Grand Jury Proceedings Under Seal*,
947 F.2d 1188 (4th Cir. 1991) ...................................................... 12, 15

*In re Lockheed Martin Corp.*,
503 F.3d 351 (4th Cir. 2007) ................................................................29

*In re McKenzie*,
180 U.S. 536 (1901) .............................................................................26

*Kusay v. United States*,
62 F.3d 192 (7th Cir. 1995) ................................... 11, 21, 22, 24, 29

*Levin v. Alms and Assoc., Inc.*,
634 F.3d 260 (4th Cir. 2011) ........................................ 11, 18, 27, 29

*Long v. Robinson*,
432 F.2d 977 (4th Cir. 1970) ...............................................................26

*Marrese v. Am. Acad. of Ortho Surgeons*,
470 U.S. 373 (1985) .............................................................................11

*McClendon v. City of Albuquerque*,
79 F.3d 1014 (10th Cir. 1996) .............................................................25

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ...................................................................... 11, 24

*Nken v. Holder*,
556 U.S. 418 (2009) .............................................................................26

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Pulliam v. Allen*,
  466 U.S. 522 (1984) ....................................................................25

*Roche v. Evaporated Milk Ass'n*,
  319 U.S. 21 (1943) .....................................................................27

*SEC v. Dunlap*,
  253 F.3d 768 (4th Cir. 2001) ......................................................25

*Stewart v. Donges*,
  915 F.2d 572 (10th Cir. 1990) ....................................... 19, 22, 24, 27

*United States v. Blake*,
  571 F.3d 331 (4th Cir. 2009) ......................................................18

*United States v. Brooks*,
  145 F.3d 446 (1st Cir. 1998) ........................................ 21, 24, 29

*United States v. Christy*,
  3 F.3d 765 (4th Cir. 1993) ..........................................................11

*United States v. Coscarelli*,
  209 F.3d 720, 2000 WL 284044 (5th Cir. Feb. 10, 2000) ..................16

*United States v. Coughlin*,
  Nos. 09-3062 & 09-3063, 2009 WL 2045408 (D.C. Cir. Jul. 8,
  2009).........................................................................................24

*United States v. DeFries*,
  129 F.3d 1293 (D.C. Cir. 1997) ................................................. 19, 23

*United States v. Distasio*,
  820 F.2d 20 (1st Cir. 1987) ........................................................17

*United States v. Dunbar*,
  611 F.2d 985 (5th Cir. 1980) ..................................................... 19, 30

*United States v. Gedeon*,
  No. 12-7688, 2013 WL 1028498 (4th Cir. Mar. 15, 2013)................12

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*United States v. Ginyard,*
  511 F.3d 203 (D.C. Cir. 2008) ...............................................................3

*United States v. Head,*
  697 F.2d 1200 (4th Cir. 1982)............................................................3, 9

*United States v. Hines,*
  689 F.2d 934 (10th Cir. 1982)...............................................................30

*United States v. Kersting,*
  *891 F.2d 1407 (9th Cir. 1989)* .............................................................17

*United States v. Leppo,*
  634 F.2d 101 (3d Cir. 1980)....................................................27, 29, 30

*United States v. Mavrokordatos,*
  933 F.2d 843 (10th Cir. 1991)...............................................................24

*United States v. Modanlo,*
  493 B.R. 469 (D. Md. 2013) ...............................................................1, 7

*United States v. Montgomery,*
  262 F.3d 233 (4th Cir. 2001)...........................................8, 12, 18, 20

*United States v. Peters,*
  3 U.S. (3 Dall.) 121 (1975)...................................................................29

*United States v. Ruhbayan,*
  325 F.3d 197 (4th Cir. 2003)...........................................................3, 7, 8

*United States v. Santtini,*
  963 F.2d 585 (3d Cir. 1992)...................................................................28

*Venen v. Sweet,*
  758 F.2d 117 (3rd Cir. 1985) ......................................................21, 22, 24

*Walker v. Lockhart,*
  678 F.2d 768, 70 (8th Cir. 1982).........................................................25

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Williams v. Brooks*,
  996 F.2d 728 (5th Cir. 1993)..................................................................24

**Statutes**

28 U.S.C. § 1291 .................................................................................2

28 U.S.C. § 1651 .................................................................................2

28 U.S.C. § 3731 ...............................................................................24

**Rules**

Fed. R. App. 8 ............................................................................ 25, 26

Fed. R. App. 8(a)..............................................................................25

Fed. R. App. 8(c)..............................................................................26

Fed. R. Crim. Proc. 12 ........................................................................1

Fed. R. Crim. Proc. 12(d)....................................................................7

Fed. R. Crim. Proc. 38 ......................................................................26

## INTRODUCTION

The District Court has usurped this Court's power.  Defendant Nader Modanlo ("Modanlo") has been tried and convicted by a court without jurisdiction. He now faces forfeiture and sentencing by the same powerless court.

More than eight months prior to trial, Modanlo moved to dismiss bankruptcy obstruction charges against him as barred by the principles of collateral estoppel "embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe v. Swenson*, 397 U.S. 436, 445 (1970).  In contravention of Federal Rule of Criminal Procedure 12, the District Court did not rule on this motion until over a week into trial, when it denied the motion by published opinion. *United States v. Modanlo*, 493 B.R. 469 (D. Md. 2013).  Modanlo timely filed an interlocutory appeal under *Abney v. United States* to vindicate his right not to be "twice put to *trial* for the same offense." 431 U.S. 651, 660–61 (1977).

Despite expressly finding that Modanlo's interlocutory appeal was non-frivolous—over Government arguments to the contrary—the District Court continued to try Modanlo even though it lacked power to do so.  Supreme Court and Fourth Circuit precedent are clear:  Modanlo's non-frivolous notice of appeal divested the District Court of jurisdiction over the Third Superseding Indictment. The District Court lost power to conduct any further substantive proceedings. Only this Court has power over the Third Superseding Indictment.  Modanlo's trial

1

and subsequent conviction are thus a nullity.  In addition, the District Court lacks

jurisdiction to conduct the post-trial proceedings on the verdict against Modanlo

called for by its Scheduling Order.  In connection with these proceedings, the

Government has already issued—and then withdrawn—a third-party "trial

subpoena" for, among other things, academic records of Modanlo's 18-year-old

daughter, who is a sophomore at Johns Hopkins University, apparently on the basis

that these records are somehow relevant to the Government's forfeiture motion.

To prevent further irreparable harm to Modanlo and to preserve its jurisdiction

over Modanlo's non-frivolous appeal, this Court should stay or prohibit further

substantive proceedings below—without delay.  The District Court has usurped

this Court's power and must be restrained.

## JURISDICTION

This Court has jurisdiction over Modanlo's interlocutory appeals pursuant to

28 U.S.C. § 1291 and the collateral order doctrine articulated in *Cohen v.*

*Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949).[1]  In this Circuit, the

*Abney* right of interlocutory appeal extends to an order denying a motion to dismiss

an indictment on collateral estoppel grounds because, "[f]or criminal purposes, the

doctrine of collateral estoppel derives from the Fifth Amendment's guarantee

---

[1]  This Court also has jurisdiction under 28 U.S.C. § 1651 to issue a writ of
prohibition in aid of its appellate jurisdiction to restrain actions by the District
Court in excess of its jurisdiction.

2

against double jeopardy." *United States v. Ruhbayan*, 325 F.3d 197, 201 (4th Cir. 2003).[2] The Government does not appear to dispute jurisdiction. Declaration of Samuel Everett Dewey (Executed on Sept. 16, 2013) ("Dewey Decl.") Ex. 1.

## RELIEF SOUGHT

1. An order staying all proceedings related to post-trial motions, the Government's forfeiture motion, sentencing, and all other non-administrative matters pending resolution of Appeals Nos. 12-4378(L) and 12-4414;

2. In the alternative, a writ of prohibition barring the District Court from further proceedings on the jury verdict entered on June 10, 2013, because Modanlo's trial and conviction were conducted without jurisdiction and are a nullity and the District Court lacks jurisdiction to conduct further proceedings on the verdict.

## ISSUES PRESENTED

1. May the District Court proceed with post-trial motions, the Government's forfeiture motion, sentencing, and all other non-administrative matters pending resolution of Appeals Nos. 12-4378(L) and 12-4414?

2. Should a writ of prohibition issue barring the District Court from further proceedings on the jury verdict entered on June 10, 2013 because Modanlo's trial and conviction were conducted without jurisdiction and are a nullity and the District Court lacks jurisdiction to conduct further proceedings?

## STATEMENT OF FACTS

Modanlo was indicted for his alleged involvement in a scheme where he was

---

[2] The *Abney* right to an interlocutory appeal applies to a motion to dismiss specific counts of a multi-count indictment. *See Ruhbayan*, 325 F.3d at 201 n.1; *United States v. Head*, 697 F.2d 1200, 1206 n.9 (4th Cir. 1982); *see also United States v. Ginyard*, 511 F.3d 203, 208 (D.C. Cir. 2008) (*Abney* extends to an appeal "from the denial of a motion to dismiss a single count of a multi-count indictment").

supposedly paid $10 million to broker the Iranian acquisition of Russian satellite technology. The Government alleged that this scheme was implemented through a series of complicated shell transactions designed to conceal Iran's and Modanlo's involvement. The Third Superseding Indictment—the operative indictment— charged that Modanlo conspired to violate the Iran Trade Embargo (Count 1), substantively violated the Iran Trade Embargo (Counts 2 through 4), laundered profits from the foregoing (Counts 5 through 10), and obstructed bankruptcy proceedings by making false statements to conceal the foregoing (Count 11).

On August 14, 2012, Modanlo moved to dismiss Counts 11 and 12 of the then-operative Superseding Indictment as barred by principles of collateral estoppel (the "Collateral Estoppel Motion"). Dewey Decl. Ex. 2. Both counts alleged that Modanlo obstructed bankruptcy proceedings by making false statements to conceal his and Iran's dealings with Russia and involvement in the $10 million transaction. Modanlo argued that estoppel arose because the veracity of his statements underlying the obstruction counts was adjudicated in his favor— and adversely to the position of the United States Trustee—in the bankruptcy proceedings themselves. The Collateral Estoppel Motion was fully briefed by October 15, 2012. *See id.* Exs. 2–4.

On October 16, 2012, the District Court held a day-long motions hearing on five fully briefed motions filed by Modanlo—including the Collateral Estoppel

Motion. *Id.* Ex. 5. During the hearing, the District Court summarily denied all relief requested by Modanlo—except for the Collateral Estoppel Motion. *Id.* 139–56. After hearing brief argument from the Government, the District Court indicated that the Collateral Estoppel Motion was the sole motion that "gives me some pause because I don't, I don't—it's not clear that it goes one way or another to me." *Id.* at 143:20–23. Noting that the motion raised a "rather interesting issue," (*id.* at 143:23) the District Court invited further argument from the Government, advising as follows: "My sense of this is I'm inclined to take it under advisement and write an opinion since I think it's got some implications for what goes on between bankruptcy courts and the criminal courts" (*id.* at 144:4–7).

After hearing additional argument from the Government, the District Court suggested that it lacked a sufficient record to rule on the question and solicited comment and limited argument from Modanlo's counsel. *Id.* at 144–53. The District Court later stopped argument, indicating that it "need[ed]" further action by the parties because it "really [thought] . . . this is really the elusive part of the case." *Id.* at 155:19–20. The District Court then sua sponte found the then-operative Counts 11 and 12 to lack requisite specificity and ordered the Government to submit a Bill of Particulars providing more-detailed information. *Id.* at 153:18–154:12. The District Court further directed that, after the Bill of Particulars was filed, Modanlo file a supplemental brief specifically addressing the

allegations in the Bill and providing details on those matters adjudicated by the Bankruptcy Court. *Id.* at 154:12–155:25; *see also id.* Ex. 6 (Order).

The Government subsequently filed a Second Superseding Indictment merging the bankruptcy counts into a single count, and providing particulars as to the alleged false statements. *Id.* Ex. 7. On November 21, 2012, Modanlo filed his supplemental motion to dismiss (*id.* Ex. 8), which the Government opposed on December 11, 2012 (*id.* Ex. 9).

The Collateral Estoppel Motion was re-argued at a motions hearing on January 10, 2013. *Id.* Ex. 10 at 31–61. At the hearing, the District Court indicated that it "[was] going to deny the motion," but intended to file a "written opinion" because the Collateral Estoppel Motion "[was] an important issue" that was "worth writing about." *Id.* at 61:17–18, 20–21. The District Court did not deny the motion on the record, but rather merely instructed the parties to "go ahead on the assumption that the motion is denied" and indicated that it would file an opinion and order actually disposing of the Collateral Estoppel Motion at an "appropriate time." *Id.* at 61:18–23.[3]

Despite the mandate of Federal Rule of Criminal Procedure 12(d) that "[t]he court *must* decide every pretrial motion before trial unless it *finds* good cause to

---

[3] The Government filed the Third Superseding Indictment on February 20, 2013. Dewey Decl. Ex. 11. Modanlo incorporated and resubmitted the Collateral Estoppel Motion as to the Third Superseding Indictment on March 26, 2013. *Id.* Ex. 12.

defer a ruling" ((*id.*) (emphases added)), that "[t]he court *must not* defer ruling on a pretrial motion if the deferral will adversely affect a party's right to appeal" ((*id.*) (emphasis added)), and that "[w]hen factual issues are involved in deciding a motion, the court *must* state its essential findings on the record" ((*id.*) (emphasis added)); despite the District Court's stated intent to rule at the "appropriate time" (Dewey Decl. Ex. 10, at 61:23); despite the Supreme Court's *repeated* holdings that the very purpose of the Double Jeopardy Clause is to bar a second *trial* (*see, e.g.*, *Abney*, 431 U.S. at 661); and despite the law of the Circuit that the denial of a motion to dismiss on collateral estoppel grounds is immediately appealable *prior to trial* (*see Ruhbayan*, 325 F.3d at 201 & n.2), the District Court failed to rule on the Collateral Estoppel Motion prior to the swearing of a jury on April 23, 2013. In fact, the District Court did not rule on the Collateral Estoppel Motion until May 1, 2013—well into the Government's case-in-chief—when it denied the motion by published opinion. *See United States v. Modanlo*, 493 B.R. 469 (D. Md. 2013) (Dewey Decl. Ex. 13); Dewey Decl. Ex. 14 (Order). The record reveals no basis for the District Court's delay in ruling on the Collateral Estoppel Motion and is entirely devoid of the *mandatory* "good cause" finding required under Fed. R. Crim. Proc. 12(d) to delay ruling on a motion to dismiss until after trial begins.

Modanlo filed a timely notice of interlocutory appeal, specifically noting that the District Court's order was immediately appealable under the law of the

Circuit.  Dewey Decl. Ex. 15, at 1–2 (citing *Ruhbayan*).  Contemporaneously,

Modanlo moved to sever out Count 11 of the Third Superseding Indictment,

arguing that the District Court was divested of jurisdiction over that Count by the

Notice of Appeal.  *Id.* at 1.  The Notice of Appeal cited and discussed controlling

authority holding that a notice of appeal ordinarily divests a district court of

jurisdiction over the portion(s) of the case involved in the appeal.  *Id.* at 3–4 (citing

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *United States v.

Montgomery*, 262 F.3d 233, 239 (4th Cir. 2001)).  This appeal was docketed in this

Court under Number 13-4378.

The next day, the Government filed a motion requesting that "the [District]

Court certify that the collateral estoppel claim is frivolous, apply the Fourth

Circuit's 'dual jurisdiction' rule, and continue with the trial as to all charged

counts."  Dewey Decl. Ex. 1, at 1.  The Government's motion did not quarrel with

Modanlo's submission that a motion to dismiss on collateral estoppel grounds is

subject to interlocutory appeal (*id.* at 2–3 (citing *Ruhbayan*)), nor did it dispute the

general proposition that a notice of appeal divests the district court of jurisdiction

over the matters appealed (*id.* at 3–4).  Instead, the Government argued that the

Collateral Estoppel Motion was frivolous in the sense that "'none of the claims

[are] true double jeopardy claims,'" and requested that the District Court certify the

appeal as frivolous and continue to exercise jurisdiction over Count 11 pursuant to

8

the "dual jurisdiction" doctrine. *Id.* at 3–5 (quoting *United States v. Head*, 697 F.2d 1200, 1205 (4th Cir. 1982)). The Government's motion specifically requested "that the Court make written findings on the question of frivolousness." *Id.* at 4 n.1.

At a hearing on these motions, the District Court *expressly declined to find the motion frivolous*, but nonetheless, without explanation, decided to continue to try all counts to verdict:

> THE COURT: And I understood you were submitting on the issue of your Notice of Interlocutory Appeal. You're just doing that on the record? Are you submitting that on the record?
> MR. OUTLAW: No, not necessarily, Your Honor. I mean, I don't know if you want to hear from us on that or not.
> THE COURT: Well, I really don't. I mean, I've looked at your papers. I've been through this I don't know how many times. I think it borders on the frivolous quite candidly. *I'm not going to take the government's position that it was*, but your motion is denied. We're not having anymore argument on that. *This whole case is being tried together and so let's be clear about that*.

*Id.* Ex. 16, at 3:24–4:11 (emphases added). The District Court's subsequent order again made clear that it did not find Modanlo's appeal to be frivolous, stating: "The Government's Motion to Certify the Collateral Estoppel Claim as Frivolous and Proceed with Trial as to All Counts (Paper No. 354) is ***DENIED** as to the Motion to Certify* and **GRANTED** as to the Motion to Proceed." *Id.* Ex. 17 (emphasis added).

9

Modanlo timely appealed (*id.* Ex. 18) and the appeal was docketed in this Court as Number 13-4414. By order dated May 30, 2013, this Court consolidated Modanlo's two appeals. (ECF No. 5). To date, the Government has neither moved in this Court to dismiss either appeal nor asked this Court to certify either appeal as frivolous.

After a four-week jury trial, Modanlo was convicted on June 10, 2013, on the bankruptcy count, Count 11, as well as Counts 1 and 3–10 (a mistrial was declared as to Count 2). Under the Scheduling Order entered by the District Court, over the next several months the parties will engage in extensive post-trial motions practice, substantial briefing on the Government's motion for forfeiture, and briefing on what will likely be a complicated sentencing. Dewey Decl. Ex. 19. Hearings for post-trial motions are set for December 5, 2013, and sentencing is set for December 20, 2013. *Id.* at 2. On September 16, 2013, the undersigned contacted counsel for the Government to request their consent to this Motion. The Government stated it will oppose the Motion and Writ Petition.

## ARGUMENT

### I.    The District Court Lost Jurisdiction Over the Third Superseding Indictment When Modanlo Appealed.

#### A.    Modanlo's Notices of Appeal Divested the District Court of Jurisdiction Over the Third Superseding Indictment.

It is axiomatic that, subject to narrow exceptions, "[t]he filing of a notice of

10

appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58; *see also, e.g.*, *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) (citing *Griggs*); *Hovey v. McDonald*, 109 U.S. 150, 157 (1883). This Court has consistently and repeatedly applied this "well-established" rule of federal jurisdiction. *See, e.g.*, *Levin v. Alms and Assoc., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011); *Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 890 (4th Cir. 1999); *United States v. Christy*, 3 F.3d 765, 767 (4th Cir. 1993).[4] And the en banc Court has made clear that this principle goes to the core of a district court's *power* to proceed: "Appellate Rule 4 is thus jurisdictional in that it establishes the point of time at which the subject-matter jurisdiction of the district court ends and that of the court of appeals begins." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 393

---

[4] The Courts of Appeals have held that in the area of federal jurisdiction, precedents governing interlocutory appeals pursuant to *Abney* are interchangeable with precedents governing interlocutory qualified immunity appeals pursuant to *Mitchell v. Forsyth*, 472 U.S. 511 (1985), interlocutory 11th Amendment appeals, Section 2255 proceedings, and interlocutory appeals under the Federal Arbitration Act of denials of stays pending arbitration. *Levin*, 634 F.3d at 265–66 (applying *Abney* precedents to the Federal Arbitration Act); *Goshtasby v. Bd. of Trustees of the University of Illinois*, 123 F.3d 427, 428 (7th Cir. 1997) (adopting rules governing *Forsyth* appeals in the 11th Amendement context); *Kusay v. United States*, 62 F.3d 192, 194–95 (7th Cir. 1995) (applying *Abney* and *Forsyth* principles to Section 2255 proceedings); *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989) ("interlocutory double jeopardy cases" are "so closely parallel to *Forsyth* appeals that the principles are freely transferable").

(4th Cir. 2004) (en banc).  Jurisdiction can generally be restored to the district

court only by the Court of Appeals' mandate.  *Montgomery*, 262 F.3d at 239.

The divestiture of jurisdiction that follows a notice of appeal is broad in

scope, reaching not only the specific issue appealed, but also those matters

"*relating* to the appeal."  *In re Grand Jury Proceedings Under Seal*, 947 F.2d

1188, 1190 (4th Cir. 1991) (emphasis added); *see also, e.g.*, *United States v.*

*Gedeon*, No. 12-7688, 2013 WL 1028498, at *1 (4th Cir. Mar. 15, 2013) (after

notice of appeal, district court retains jurisdiction only over those matters "*wholly*

*collateral* to those raised in the appeal or in aid of the appeal" (emphasis added)).

When Modanlo perfected his first Notice of Appeal, the District Court was

divested of jurisdiction over the Third Superseding Indictment—in its entirety.  To

be sure, Count 11 is but 1 of 11 counts, but the underlying conduct alleged in

Count 11 is directly related both as a factual and as a legal matter to the conduct

alleged in Counts 1–10.  Dewey Decl. Ex. 11.  This fact is readily apparent from

the text of the Third Superseding Indictment, the District Court's charge to the

jury, and the Government's own arguments:

- The Government specifically pled that the underlying putative false statements allegedly constituting bankruptcy fraud were overt acts in furtherance of the overarching conspiracy pled in Count 1.  *Id.* at Count 1, Overt Acts U, W, X, Z, AA, & CC.

- On August 8, 2012, the Government moved for a continuance to allow it to obtain evidence from Switzerland.  *Id.* Ex. 20.  In its papers, the Government emphasized that the evidence in question was essential to proving "the element

12

of knowledge underpinning the IEEPA, money laundering and bankruptcy fraud charges against the defendant." *Id.* at 8. During argument, the Government represented that two Swiss witnesses were essential to the Government's case and the Government would potentially be unable to proceed to trial without them. *Id.* Ex. 21, at 19:5–8. The District Court then inquired as to whether the bankruptcy counts could be severed out. *Id.* at 29:22–30:4. The Government replied: "So, *I don't think we can do this separately.* There are documents in the Swiss, in the Swiss records that have Mr. Modanlo's name on them. I think the issues are the same. We have profit issues and other things that we have to address with the Swiss witnesses, *and the whole story, sort of, you know, explains everything. And so, you know, we wouldn't look to sever the bankruptcy counts from anything else to go forward with that, because I think the picture has to be set out with the Swiss witnesses to be central to both.*" *Id.* at 32:6–14 (emphases added). The District Court then granted the motion to continue, but ruled that no further continuances would be granted, regardless of the importance of the two Swiss witnesses to the Government's case. The following colloquy then ensued:

> "THE COURT: . . . . I was holding open the possibility that you might sever and try a case in October, particularly the bankruptcy case, but you answered my concern there by saying you can't do it. Fair enough. That's your view. *So if everything has to be tried together, it will stand or fall together.*
> MR. SALEM: *All right. We understand, Your Honor. We appreciate that.*"
> *Id.* at 38:18–24 (emphases added).

- The essence of the Government's case at trial—as summarized in their own words during its opening statement—was that Modanlo received $10 million for his part in brokering a satellite transaction between a Russian corporation and Iran and then worked to conceal that conspiracy by repeatedly lying in bankruptcy proceedings. *Id.* Ex. 22 at 4.

  - "Over the next few weeks we will prove to you that Nader Modanlo supported the Iran satellite program. That he received and he laundered $10 million, *and that he obstructed court proceedings here in this very courthouse* when they started to ask questions about just exactly who provided the $10 million to Nader Modanlo." *Id.* at 4:15–20 (emphasis added); *see also id.* at 16:2–4.

- The District Court instructed the jury—over Modanlo's objection—that it could infer "Consciousness of Guilt" as to Counts 1–10 if it found that Modanlo made false statements in the bankruptcy proceedings:

"You have heard testimony and seen evidence that the defendant made certain statements outside the courtroom—specifically, in United States Bankruptcy Court proceedings in this district—in which the defendant claimed that his conduct was consistent with innocence and not with guilt. The government claims that these statements in which he exonerated or exculpated himself are false. The defendant claims that these statements were not false.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may, but are not required to infer that the defendant believed that he was guilty of the conduct charged in one or more of Counts One through Ten . . . ." *Id.* Ex. 23 at 51; *accord id.* Ex. 24 at 1:5–15 (oral instruction); *see also id.* Ex. 25 at 31–38, 79–80 (charge conference).

- During closing argument, the Government argued extensively—pursuant to the District Court's Instructions—that Modanlo's alleged false statements in bankruptcy proceedings proved his intent as to Counts 1–10, and relied, in part, upon alleged false statements in bankruptcy proceedings to lay venue for the alleged conspiracy (Count 1) in the District of Maryland:

  - "So, Mr. Modanlo took a chance and he broke the rules. And he thought he could make his conduct undetectable, thought he could make it undetectable by doing it in Switzerland, by making everything so complicated that nobody could ever figure out what he did, *and then by trying to cover up [in Bankruptcy Court] what happened.*" *Id.* Ex. 26, at 9:18–22 (emphasis added).

  - "[T]he intent with which an act is done is often more clearly and conclusively shown by the act itself or by the series of acts than by words or explanations uttered long after the fact.
    So look at what Mr. Modanlo did then, not the explanations he gave later on.
    *One more thing, Judge Messitte told you, you can tell a lot about the defendant's intent to commit the conspiracy, the money laundering crimes in 2002 and 2003 forward from the fact that he later testified falsely about those events in the Bankruptcy Court.*
    Again, it's another piece of common sense. One piece of common sense you know from your lives is that generally innocent people don't make up phoney stories about their conduct. *People make up stories to cover up something they feel guilty about. And that's why Mr. Modanlo*

*feeded instances of false testimony, concealing half truths in the bankruptcy case.*

The Judge tells you in Instruction Number 43, false exculpatory statement. If you find that the defendant gave a false name in order to divert suspicion from himself, you may infer that the defendant believed that he was guilty of the conduct charged in one or more of Counts One through Ten.

*By the time he is questioned in the various proceedings in the Bankruptcy Court, Nader Modanlo knew that the $10 million deal with the Iranians was illegal. That's why he gave false testimony* that [he] didn't know Mr. Heidari or Mr. Modares, that he didn't have anything to do with the creation of Prospect Telecom, and all the other falsehoods and acts of concealment that we're going to talk about in more detail later on.

*In other words, just to nip this all together, the falsehoods that Nader Modanlo told under oath in 2005, in 2006, in 2007 tell you a lot about his intent in 2001, 2002, 2003. The bottom line is, when he made those statements in Bankruptcy Court, Mr. Modanlo knew he felt guilty about the things he was lying about, and you can consider that in determining his intent with respect to the earlier crimes.*

Okay. So, now that you know how to put together circumstantial evidence and intent to try to figure out the defendant's role in the conspiracy and the other crimes, let's turn to the evidence." *Id.* at 16:3–17:18 (emphases added).

- "The overt act part is pretty simple here. This conspiracy involves and you'll have our carts full of exhibits here. This involves, you know, a phone book where it says overt acts. The Indictment lays out 29 of them ranging from Switzerland to Russia, to Bowie and focusing on the creation of Prospect Telecom, the Russian/Iranian satellite *and the bankruptcy proceedings.*" *Id.* at 68:3–9 (emphasis added).

- "The specified overt act in the Indictment in Maryland included the arrival of the $10 million *and a number of instances of false testimony in the Bankruptcy Court*." *Id.* at 68:18–20 (emphasis added).

The counts of the Third Superseding Indictment are related within the

meaning of *In re Grand Jury Proceedings*. The specific point at issue in the

interlocutory appeal of Count 11 is whether the Government is precluded from contesting the veracity of six statements Modanlo made during the bankruptcy proceedings. The veracity of those six statements is not merely related to Counts 1–10—*it is directly at issue*. The Government alleged as to Count 1 that each allegedly false statement constituted an overt act, and relied, in part, on the locus of the putative false statements to lay venue. Necessarily, to prove these overt acts, the Government was required to put the veracity of the statements before the District Court and a jury. But a ruling in Modanlo's favor in the interlocutory appeal would preclude the Government from doing so. And as to Counts 1–10, the Government sought to prove the requisite intent by arguing that—pursuant to the District Court's Instruction—such intent could be inferred from the falsity of the six statements. Again, this argument required the Government to put the veracity of the statements before the District Court and a jury, and again such an argument would be precluded by a ruling in Modanlo's favor on the interlocutory appeal. Because the veracity of the six putatively false statements would be simultaneously before this Court and the District Court sitting with a jury, the counts are related. Accordingly, the entire Third Superseding Indictment was brought up by the Notice of Appeal. *See, e.g.*, *United States v. Coscarelli*, 209 F.3d 720, 2000 WL 284044, at *1 (5th Cir. Feb. 10, 2000) (entire trial stayed on interlocutory appeal of conspiracy count); *United States v. Kersting*, 891 F.2d 1407, 1413 (9th Cir. 1989)

16

(district court's jurisdiction was divested over an issue which shared a common legal and factual question with the issue on appeal), *overruled on other grounds by Church of Scientology v. United States*, 506 U.S. 9 (1992.)[5]

Because post-trial motions, sentencing, and forfeiture proceedings can occur only pursuant to the jury's verdict, and, substantively, these proceedings are bound to the merits of the underlying counts, they too are brought up by the Notices of Appeal. *See, e.g.*, *Goshtasby v. Bd. of Trustees of the Univ. of Illinois*, 123 F.3d. 427, 428–29 (7th Cir. 1997) (staying discovery and other proceedings pending resolution of interlocutory appeal of denial of 11th Amendment immunity); *United States v. Distasio*, 820 F.2d 20, 23 (1st Cir. 1987) (district court lacked jurisdiction to reduce sentence as sentence was related to verdict on appeal); *Garcia v. Burlington N. R.R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987) (district court lacked jurisdiction to modify judgment to impose pre-trial interest as damages were related to the verdict on appeal).

**B.     The Dual Jurisdiction Doctrine Has No Application Here Because the District Court Expressly Found Modanlo's Appeal Not to Be Frivolous.**

Recognizing that Modanlo's Notice of Appeal deprived the District Court of

---

[5]   The fact that Modanlo sought to sever out Count 11 below and proceed to trial on the remaining counts is irrelevant to this analysis.  The defect in the proceeding is *jurisdictional* in nature.  *See, e.g.*, *infra*, at 20–24.  And Modanlo's willingness to proceed to try the case with Count 11 severed out says nothing about his willingness to proceed to try the case on the entire Third Superseding Indictment— they are different questions.

jurisdiction, the Government requested below that the District Court certify the appeal as frivolous so as to regain and then retain jurisdiction under the so-called dual jurisdiction doctrine. But the District Court *expressly declined to do so, finding the appeal non-frivolous*. Accordingly, the dual jurisdiction doctrine has no application here—the general rule of *Griggs* controls and the District Court was divested of jurisdiction to try the Third Superseding Indictment.

As this Court has explained, the dual jurisdiction doctrine in its classic formulation "allows a district court to proceed with trial while the defendant pursues an *Abney* double jeopardy appeal, *where the district court has concluded that the appeal is frivolous*." *Montgomery*, 262 F.3d at 240 (emphasis added). As the name suggests, if the appeal is certified as frivolous, both the district court and the Court of Appeals "dually" possess jurisdiction over the matters on appeal. *See, e.g.*, *United States v. Blake*, 571 F.3d 331, 343 n.6 (4th Cir. 2009); *Montgomery*, 262 F.2d at 240. In the Fourth Circuit, the certification of frivolity can be made either by the District Court or, in very limited circumstances, the Court of Appeals. *See Montgomery*, 262 F.3d at 240.

Critically, it is the *entry* of the certification of frivolity—*prior* to the district court proceeding in question—that suspends the normal operation of the divestiture of jurisdiction rule. *See, e.g.*, *Levin*, 634 F.3d at 266 ("[A]n appeal on the issue of arbitrability automatically divests the district court of jurisdiction over the

18

underlying claims and requires a stay of the action, unless the district court certifies the appeal as frivolous or forfeited."); *Stewart v. Donges*, 915 F.2d 572, 577 (10th Cir. 1990) ("[I]t is the district court's *certification* of the defendant's appeal as frivolous or forfeited rather than merely the *fact* that the appeal is frivolous which allows the district court to retain jurisdiction to conduct a trial."); *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir. 1980) (en banc) ("If the claim is found to be frivolous, the filing of a notice of appeal by the defendant shall not divest the district court of jurisdiction over the case.  If non-frivolous, of course, the trial cannot proceed until a determination is made of the merits of an appeal."). A court cannot invoke the dual jurisdiction doctrine via a retroactive finding of frivolity—the finding of frivolity *must* be entered *prior* to the proceeding in question.  As the D.C. Circuit has explained, "[t]hat we ultimately sustained the district court's jurisdiction in this case is of no moment; district court jurisdiction cannot turn on retrospective examination of appeals court action."  *United States v. DeFries*, 129 F.3d 1293, 1303 (D.C. Cir. 1997); *see also, e.g.*, *Stewart*, 915 F.2d at 578 n.8 ("Only a pretrial determination of frivolousness or forfeiture can return jurisdiction to the district court during the pendency of an interlocutory appeal . . . .").

On the uncontroverted portions of the record, the Government cannot avail itself of the dual jurisdiction doctrine—its position is squarely foreclosed by

*Montgomery*, *Levin*, and a host of opinions from other circuits. The Government expressly sought certification below that Modanlo's appeal was frivolous to allow the District Court to "retain jurisdiction and continue with the trial of all counts of the indictment." Dewey Decl. Ex. 1 at 2. The District Judge expressly denied this motion in open court—"*I'm not going to take the government's position that [the Notice of Appeal was frivolous]*" (*id.* Ex. 16, at 4:7–9 (emphasis added))—and then entered an order to that effect: "The Government's Motion to Certify the Collateral Estoppel Claim as Frivolous and Proceed with Trial as to All Counts (Paper No. 354) is ***DENIED** as to the Motion to Certify . . . *" (*id.* Ex. 17 (emphasis added)). At no point did the Government avail itself of the procedure set forth in *Montgomery* to obtain review of that ruling in this Court.[6] This Court has acted only to facilitate Modanlo's appeals. *See, e.g.*, (ECF No. 5) (order consolidating appeals). The dual jurisdiction doctrine has no application here. The Notice of Appeal divested the District Court of jurisdiction over the Third Superseding Indictment.

### C. The Trial and Conviction of Modanlo Was a Nullity and the District Court Lacks Jurisdiction to Conduct Further Proceedings on the Verdict.

Because the District Court lost jurisdiction over the Third Superseding

---

[6] Indeed, in *Montgomery* itself, the Government filed a "Motion to Stay Interlocutory Appeals" prior to the commencement of trial requesting that this Court reverse the District Court's finding that the interlocutory appeal in question was non-frivolous. Dewey Decl. Ex. 27.

Indictment, Modanlo's subsequent trial and conviction is a nullity and further proceedings upon the jury verdict are in excess of the District Court's jurisdiction.

Courts have repeatedly emphasized that the rule of divestiture is *jurisdictional* in nature. As the en banc Court has explained, a notice of appeal "establishes the point of time at which the *subject-matter jurisdiction of the district court ends* and that of the court of appeals begins." *Brickwood*, 369 F.3d at 393 (emphasis added); *see also Kusay*, 62 F.3d at 194 ("[J]urisdiction is power to act."); *Venen v. Sweet*, 758 F.2d 117, 120 (3d Cir. 1985) ("'[D]ivest' means what it says—the power to act, in all but a limited number of circumstances, has been taken away."). It flows inexorably from this precept—a court is without *power* to proceed in the face of a non-frivolous notice of appeal—that "[u]ntil the mandate issues, the case is 'in' the court of appeals, and any action by the district court *is a nullity*." *Kusay*, 62 F.3d at 194 (emphasis added); *see also United States v. Brooks*, 145 F.3d 446, 454 (1st Cir. 1998) (in light of the Government's interlocutory notice of appeal, "[t]he trial never should have begun (and was, therefore, a nullity)").

The divestiture of jurisdiction rules exist for a reason—they play a crucial role in the adversarial system by ensuring the predictable and regular administration of justice via clear and readily discernible rules governing the essential power of a court to act. As Judge Easterbrook explained in the course of

21

rejecting the proposition that a retroactive frivolity finding could "restore" jurisdiction via considerations of efficiency:  "Judicial power needs a more predictable basis.  Litigants and judges should be able to know, from facts observable at the time they act, which shell covers the pea.  Otherwise time, energy, and money will be wasted because later events will require hearings to be held anew and opinions rewritten."  *Kusay*, 62 F.3d at 194; *see also, e.g.*, *Stewart*, 915 F.2d at 577 ("This rule provides valuable certainty and clarity by creating a bright jurisdictional line between the district court and the circuit court.  A contrary rule which would allocate jurisdiction upon the actuality of whether the appeal is frivolous rather than upon the district court's certification of frivolousness, would give rise to unwarranted confusion and uncertainty as district court jurisdiction could never be known until after the appellate court had ruled."); *Venen*, 758 F.2d at 123 ("[J]urisdictional requirements may not be disregarded for convenience sake.").

Numerous Courts of Appeals have applied these principles to hold null and void proceedings conducted during the pendency of a notice of appeal that had not been found frivolous.  And in the course of honoring the clear and principled rule that such proceedings are void as a structural matter, courts have rejected Government requests to apply harmless error review or to ignore jurisdictional technicalities in favor of supposed considerations of efficiency.  For example, in

*DeFries*, the D.C. Circuit confronted a situation where the district court had dismissed a count of an indictment and the Court of Appeals had reversed that dismissal, but had not yet issued its mandate. 129 F.3d at 1302. The Government moved to expedite the mandate to allow the scheduled trial to proceed, but the D.C. Circuit denied the motion and directed the Government to respond to the defendant's re-hearing petitions. Over defendant's objection, the district court then proceeded to trial. The mandate did not issue until over a week into trial. *Id.* Applying the principles articulated above, the D.C. Circuit held that the district court "lacked jurisdiction" to try the count in question and vacated the conviction and remanded for possible retrial. *Id.* at 1303. In so doing, the D.C. Circuit noted that "we fully understand that appellants' trial took several months, consuming thousands of hours of court and lawyer time," but held that reversal was nonetheless required because the divestiture of jurisdiction rule "is clear, well-established, and grounded in solid considerations of efficient judicial administration," and that "[b]ecause 'jurisdiction is the power to act,' it is essential that well-defined, predictable rules identify which court has that power at any given time." *Id.*

Similarly, in *Kusay*, the Seventh Circuit confronted a situation where it had remanded a Section 2255 petition to the district court for an evidentiary hearing and the district court denied relief prior to the issuance of the mandate. 62 F.3d at

193.  The Seventh Circuit applied the principles articulated above and vacated and remanded—rejecting an invitation to apply harmless error review.  *Id.* at 195–96.[7]

These cases provide the framework for resolving this appeal.  Modanlo timely noticed an appeal and the District Court found that appeal to be non-frivolous.  The Notices of Appeal divested the District Court of jurisdiction to try the case to verdict—the trial and verdict are a "nullity."  Because the District Court continues to lack jurisdiction, it also necessarily lacks power to proceed with the scheduled post-trial motions, forfeiture proceedings, and sentencing proceedings.

---

[7]  *See also, e.g.*, *United States v. Coughlin*, Nos. 09-3062 & 09-3063, 2009 WL 2045408, at *1 (D.C. Cir. July 8, 2009) (staying ongoing criminal trial because "[a]lthough we are mindful of the resources that have been expended to date on the retrial, a stay of that trial is appropriate in light of the timely filing of the notices of interlocutory appeal, and the district court's express decision not to characterize the double jeopardy claim as frivolous as to two of the counts"); *Brooks*, 145 F.3d at 454 (trial conducted after the Government filed a valid 18 U.S.C. § 3731 appeal was a "nullity"); *Williams v. Brooks*, 996 F.2d 728, 730–31 (5th Cir. 1993) (district court lacked jurisdiction to enter an order dismissing a case on procedural grounds when a non-frivolous *Forsyth* appeal was pending); *United States v. Mavrokordatos*, 933 F.2d 843, 845–46 (10th Cir. 1991) (trial and dismissal after the Government filed a valid 18 U.S.C. § 3731 appeal were a nullity, and accordingly double jeopardy did not bar retrial); *Stewart*, 915 F.2d at 579 (concluding that jury trial carried out during pendency of a non-frivolous *Forsyth* appeal was "conducted without jurisdiction," and accordingly that the verdict was "without effect," and remanding for re-trial); *Venen*, 758 F.2d at 123 (concluding that the court lacked power to grant reconsideration of motion to dismiss on judicial immunity grounds when an interlocutory appeal from the denial of that motion was pending, and noting that "[t]his litigation has been unduly prolonged, unnecessarily burdening this court in this appeal, as it will burden the district court in the proceedings which will undoubtedly follow.  Nevertheless, jurisdictional requirements may not be disregarded for convenience sake.").

## II. In the Unusual Procedural Posture Presented Here, Modanlo Is Entitled to a Stay of Post-Trial Proceedings As a Matter of Course; Or In the Alternative, a Prohibition.

In the highly unusual case presented here, a case where a District Judge has been divested of jurisdiction by a notice of appeal and has *expressly* declined to invoke the dual jurisdiction doctrine by finding the notice of appeal non-frivolous, a stay should issue automatically. In the alternative, a writ of prohibition must issue as a matter of right per its historical office—to "prevent" a court from "exceeding [its] jurisdiction." *Pulliam v. Allen*, 466 U.S. 522, 532–33 (1984).[8]

---

[8] Although Fed. R. App. Proc. 8 does not appear to apply here, *see*, *infra*, at n.9, it could be argued that the principle embodied in 8(a), that ordinarily an application for a stay must be made to the district court, does. *See SEC v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001) (normal rule). Even if this requirement applies here it poses no barrier to this Court granting the requested relief for two independent reasons. *First*, the requirement has no application here pursuant to the well-established exception to the requirement that one need not make application to the trial court when it would be futile to do so. *See*, *e.g.*, *Chem. Weapons Working Group v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996); *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996); *Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982). Here, any application to the District Court would be futile. The District Court expressly rejected Modanlo's earlier motion to sever (Dewey Decl. Ex. 15), granted the Government's motion to proceed to try the entire case together (*id.* Ex. 1), and indicated that: "*This whole case is being tried together*" and so let's be clear about that." *Id.* Ex. 16 at 4:10–11 (emphasis added). The District Court is plainly "commit[ted] to a particular resolution"—accordingly a motion to stay below would be futile. *Chem. Weapons*, 101 F.3d at 1362. *Second*, the issues presented herein are purely legal and accordingly this Court should exercise its discretion to excuse the requirement that a motion be made below. *See Grubb v. FDIC*, 833 F.2d 222, 224 (10th Cir. 1987) (explaining that the Advisory Committee Notes state that the requirement "applies principally to factual questions . . . because the trial judge who is familiar with the record and the

25

## A.    A Stay Should Issue As a Matter of Course.

This Court has ample authority to discharge its duty to hold post-trial proceedings in abeyance pending resolution of Modanlo's *Abney* appeals. As the Supreme Court has explained, "[it] has always been held . . . that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Nken v. Holder*, 556 U.S. 418, 426 (2009). This authority is "inherent" and is codified in the All Writs Act. *See, e.g.*, *In re McKenzie*, 180 U.S. 536, 549–51 (1901). This power to "stay" encompasses the power to hold proceedings below in abeyance pending resolution of their legality. *See, e.g.*, *Nken*, 556 U.S. at 428 ("[A] stay operates upon the judicial proceeding itself . . . . by halting or postponing some portion of the proceeding.").[9]

In the unusual case where an *Abney* appeal has been found by the district court to be non-frivolous, the usual standard for a stay does not apply. *See, e.g.*, *Nken*, 556 U.S. at 434 (setting forth standard burden and test); *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) (Winter, J., in chambers) (same). Rather, the

_____

parties is best able to make those judgments," and exercising discretion to reach a purely legal issue absent a motion below).

[9] The normal vehicle for a stay pending appeal, Fed. R. App. Proc. 8, does not appear to apply here. Fed. R. App. Proc. 8(c) provides: "Stay in a Criminal Case. Rule 38 of the Federal Rules of Criminal Procedure governs a stay in a criminal case." On its face, Fed. R. Crim. Proc. 38 appears to have no application to the situation present here—the stay of proceedings pending resolution of an *Abney* appeal found non-frivolous by the District Court.

26

stay issues as a matter of course. When the *Abney* entitlement not to be *tried* is at issue and the appeal has been found non-frivolous, "the trial court *must* suspend its proceedings once a notice of appeal is filed." *United States v. Leppo*, 634 F.2d 101, 105 (3d Cir. 1980) (emphasis added); *see also Dunbar*, 611 F.2d at 988. If the trial court nonetheless proceeds, the Court of Appeals *must* act "to protect the defendant's double jeopardy rights by staying proceedings below pending appeal . . . ." *Dunbar*, 611 F.2d at 989. "[I]t should not be necessary for the defendants to come to this court, hat in hand, seeking relief that is theirs by virtue of . . . [*Abney*] which authorizes *pre-trial* appeals." *Apostol*, 870 F.2d at 1339; *see also Levin*, 634 F.3d at 266 ("Given that the district court here specifically held that the appeal was not frivolous, a stay of action during the pendency of this appeal was *required*." (emphasis added)); *Stewart*, 915 F.2d at 578 n.6. The District Court found Modanlo's appeal non-frivolous in response to a Government motion for a finding of frivolity and the Government did not contest that finding here. As a matter of law, Modanlo is entitled to a stay on this record.

### B. In the Alternative, a Prohibition Should Issue.

In the alternative, Modanlo is entitled to a prohibition to "confine" the District Court "to a lawful exercise of its prescribed jurisdiction." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943).

A prohibition will issue only where there is: (1) "no other adequate means

27

to obtain relief [;(2)] to which there is a 'clear and indisputable' right" (*In re Blackwater Security Consulting LLC*, 460 F.3d 576, 592 (4th Cir. 2006) (citation omitted)); and (3) "the issuance of the writ will effect right and justice in the circumstances" (*In re Braxton*, 258 F.3d 250, 261 (4th Cir. 2001); *see also In re Catawba Indian Tribe of S.C.*, 973 F.2d 1133, 1136 (4th Cir. 1992) (en banc)).[10]  In the context of the question of law at issue here, the entitlement to prohibition is "clear and indisputable" where the district court abuses its discretion.  *See, e.g.*, *United States v. Santtini*, 963 F.2d 585, 594 (3d Cir. 1992).

Should this Court not grant a stay, Modanlo is entitled to a Prohibition. *First*, neither Modanlo's Double Jeopardy right not to be *tried* on a charge barred by collateral estoppel nor his entitlement not to be *tried* during the pendency of an *Abney* appeal that the District Court has found non-frivolous can be completely vindicated on final appeal.  That is the entire point of *Abney*'s holding that an order denying a double jeopardy plea in bar is a collateral order:  "[T]he Double Jeopardy Clause protects an individual against more than being subjected to double punishments[; i]t is a guarantee against being twice put to *trial* for the same offense."  431 U.S. at 660–61.  It is thus irrelevant whether the District Court's order denying the Collateral Estoppel Motion or its decision to try the Third

---

[10]  Although these cases discuss writs of mandamus, not writs of prohibition, they control here because this Court treats the two writs "interchangeably."  *In re Braxton*, 258 F.3d at 256 n.5.

Superseding Indictment (when it was divested of jurisdiction to do so by—in its own words—Mondanlo's *non-frivolous* Notice of Appeal) are technically reviewable on appeal from a final judgment of conviction. It is the ability to obtain *interlocutory* review of these rulings that is at issue. *Cf. In re Lockheed Martin Corp.*, 503 F.3d 351, 353 (4th Cir. 2007) (mandamus lies to protect Seventh Amendment right to jury trial even when denial of jury trial could be raised on final appeal).

*Second*, Modanlo's right to the writ is clear and indisputable—the District Court exercised a power it did not have. When the District Court found that the *Abney* appeal was non-frivolous, it had *power* to do only one thing—stop all substantive proceedings on the Third Superseding Indictment—*immediately*. *See, e.g.*, *Levin*, 634 F.3d at 266; *Leppo*, 634 F.2d at 105; *Apostol*, 870 F.2d at 1339. Its subsequent acts were a "*nullity*" and it lacks jurisdiction to proceed as contemplated by the Scheduling Order. *Kusay*, 62 F.3d at 194 (emphasis added); *see also, e.g.*, *Brooks*, 145 F.3d at 454. Modanlo's right is clear.

*Third*, the right and justice of issuing a prohibition to prevent a court from proceeding against a man over whom it plainly lacks jurisdiction is beyond dispute. *See, e.g.*, *United States v. Peters*, 3 U.S. (3 Dall.) 121 (1795). Other Circuits have recognized that prohibition lies to restrain the district court from proceeding in these circumstances. "This court is . . . empowered to protect the defendant's

29

double jeopardy rights by . . . issuing a writ of mandamus or prohibition . . . ."
*Dunbar*, 611 F.2d at 989; *see also United States v. Hines*, 689 F.2d 934, 937 (10th
Cir. 1982); *Leppo*, 634 F.2d at 105.  If a stay is not granted here, a prohibition must
issue barring the District Court from further proceedings on the jury verdict
because Modanlo's trial and conviction were conducted without jurisdiction and
are a nullity.

## CONCLUSION

For all of the foregoing reasons, a stay or a prohibition must issue in the
form prayed.

Dated:  September 16, 2013

Respectfully submitted,

s/ Samuel Everett Dewey

James P. Wyda
Paresh S. Patel
OFFICE OF THE FEDERAL PUBLIC
DEFENDER DISTRICT OF MARYLAND
6411 Ivy Lane, Suite 710
Greenbelt, MD  20770
(301) 344-0600

David P. Burns
Samuel Everett Dewey
  *Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
sdewey@gibsondunn.com

*Counsel for Nader Modanlo*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of September, 2013, I electronically filed the foregoing Defendant-Appellant's Motion to Stay Proceedings in the Court Below Pending Appeal, or in the Alternative, Petition for a Writ of Prohibition to the United States District Court for the District of Maryland with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's appellate CM/ECF system.  I further certify that I caused two true and correct copies of the foregoing Motion to be served by hand-delivery this same day, September 16, 2013, on the following counsel for the United States, and the Hon. Peter J. Messitte, United States District Judge, at the addresses listed:

1. David I. Salem, Esq.
   Stuart Berman, Esq.
   Office of the U.S. Attorney
   6406 Ivy Lane Suite 800
   Greenbelt, MD  20770

2. The Hon. Peter J. Messitte
   United States District Judge
   6500 Cherrywood Lane, Room 475A
   Greenbelt, MD  20770

Service also was accomplished on the following counsel for the United States by the appellate CM/ECF system:

David I. Salem, Esq.
Stuart Berman, Esq.
Office of the U.S. Attorney
6406 Ivy Lane Suite 800

Greenbelt, MD  20770

s/ Samuel Everett Dewey
Samuel Everett Dewey